UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| LYNNETTE HATCHER, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 4:12-CV-1887 CAS |
| ) | |
| MCJUNKIN RED MAN CORPORATION, ) | |
| et al., ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM AND ORDER**

This removed matter is before the Court on defendant Donna Puleo's motion to dismiss and defendant McJunkin Red Man Corporation's ("McJunkin") motion to strike plaintiff's claim for punitive damages or alternatively for more definite statement. Plaintiff Lynnette Hatcher opposes the motions and they are fully briefed. Plaintiff filed a Petition for Wrongful Death in state court that contained two wrongful death counts against defendant McJunkin and one against defendant Puleo. Complete diversity was lacking on the face of the petition as both plaintiff and defendant Puleo are citizens of the State of Missouri, but defendants removed the case to federal court claiming that Puleo was fraudulently joined to defeat diversity jurisdiction.

For the following reasons, the Court finds that Puleo was not fraudulently joined as a defendant and, as a result, the Court lacks subject matter jurisdiction over this action. Defendant McJunkin's motion will remain pending for determination by the state court following remand.

**Background**

On August 23, 2012, plaintiff filed her Petition for Wrongful Death ("Petition") in the Circuit Court of the City of St. Louis, State of Missouri. The Petition alleged that on January 9, 2011,

plaintiff's father, decedent Leonard Perry, died in a shed located on defendant McJunkin's premises located at 7400 South Broadway in the City of St. Louis (the "Premises"), when a fire broke out and trapped him without a means to escape. Petition at 2, ¶¶ 5-7.

Counts I and II of the Petition were directed against defendant McJunkin and titled "Wrongful Death - Licensee" and "Wrongful Death - Trespasser," respectively. In these counts plaintiff alleged that McJunkin was negligent in that the shed contained certain specified dangerous and hazardous conditions and as a result was not reasonably safe, that McJunkin knew of one or more of these conditions and that the shed was not reasonably safe, knew that persons such as the decedent would not discover the conditions or realize the risk of harm, failed to use ordinary care to either make the conditions reasonably safe or adequately warn of the dangerous conditions, and as a result, the decedent was killed when a fire broke out in the shed. Count II is expressly pleaded in the alternative to Count I. Petition, ¶ 18.

Count III of the Petition, titled "Wrongful Death - Negligence," alleged that defendant Puleo is the yard manager of the Premises and a co-employee of the decedent,[1] and that Puleo was negligent and exposed the decedent to an unreasonable danger and unreasonably anticipated risk of harm by failing to (1) provide adequate smoke and fire detection devices in the shed, (2) provide fire suppression devices and systems in the shed, (3) ensure there were adequate emergency fire exits and points of emergency egress in the shed, (4) maintain adequate and/or non-defective coupling between a space heater and the natural gas supply line; (5) prevent natural gas from flowing freely into the shed, (6) warn of the dangerous conditions within the shed, and (7) exercise ordinary care

---

[1]As defendants observe in the Notice of Removal, plaintiff did not allege that the decedent was an employee of McJunkin the counts that seek relief against McJunkin.

2

to make the shed reasonably safe.  Count III is expressly pleaded in the alternative to Counts I and II.  Petition, ¶ 30.

The defendants removed this action to federal court pursuant to 28 U.S.C. § 1441 on the basis of diversity jurisdiction.  McJunkin is a Delaware corporation with its principal place of business in Texas, and plaintiff and defendant Puleo are citizens of Missouri.  Although the common citizenship of plaintiff and Puleo would normally destroy diversity and divest this Court of subject matter jurisdiction, as stated above, defendants claim that plaintiff fraudulently joined Puleo and therefore the Court has jurisdiction over this case.

Defendants asserted in the Notice of Removal that under applicable Missouri law, a co-employee such as Puleo does not owe a fellow employee any duty to perform her employer's non-delegable duty to provide a safe workplace, citing Hansen v. Ritter, 375 S.W.3d 201, 214 (Mo. Ct. App. 2012), and can only be liable to an injured co-employee if she is alleged to have done "something more" than breach one of the employer's non-delegable duties, id. at 214-16 (citing State ex rel. Badami v. Gaertner, 630 S.W.2d 175, 180 (Mo. Ct. App. 1982)), such that the "duty . . . would exist independent of the master-servant relationship[.]"  Id. at 217.

Defendants contended in the Notice of Removal that Count III fails to allege any duty of defendant Puleo independent of the employer's non-delegable duty to provide a safe workplace and, as a result, Puleo is fraudulently joined in this action because no reasonable basis exists in law or fact for the allegations against her.  On the same day that defendants removed the case to this Court, defendant Puleo filed a motion to dismiss the Petition asserting the same argument.

In response to Puleo's motion to dismiss, plaintiff filed her First Amended Complaint for Wrongful Death ("Complaint").  The Complaint asserts four counts against defendant McJunkin:

3

Wrongful Death–Invitee (Count I), Wrongful Death–Licensee (Count II), Wrongful Death–Trespasser (Count III), and Wrongful Death–Punitive Damages (Count IV); and five counts against defendant Puleo: Wrongful Death–Invitee (Count V), Wrongful Death–Licensee (Count VI), Wrongful Death–Trespasser (Count VII), Wrongful Death–Co-Employee Negligence (Count VIII), and Wrongful Death–Punitive Damages (Count IX). As Puleo notes in her motion to dismiss the Complaint, plaintiff does not allege in the allegations common to all counts that the decedent was an employee of McJunkin, and makes such an allegation only in Count VIII. As Puleo also notes, the counts in the Complaint are not expressly pleaded in the alternative to each other.

**Legal Standard**

The purpose of a motion to dismiss for failure to state a claim is to test the legal sufficiency of the complaint. To survive a motion to dismiss pursuant to Rule 12(b)(6) for failure to state a claim upon which relief can be granted, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A plaintiff need not provide specific facts in support of her allegations, Erickson v. Pardus, 551 U.S. 89, 93 (2007) (per curiam), but "must include sufficient factual information to provide the 'grounds' on which the claim rests, and to raise a right to relief above a speculative level." Schaaf v. Residential Funding Corp., 517 F.3d 544, 549 (8th Cir.), cert. denied, 129 S. Ct. 222 (2008) (citing Twombly, 550 U.S. at 555 & n.3). This obligation requires a plaintiff to plead "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555. A complaint "must contain either direct or inferential allegations respecting all the material elements necessary to sustain recovery under *some* viable legal theory." Id. at 562 (quoted case omitted).

4

This standard "simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of [the claim or element]." Id. at 556.

On a motion to dismiss, the Court accepts as true all of the factual allegations contained in the complaint, even if it appears that "actual proof of those facts is improbable," id. at 556, and reviews the complaint to determine whether its allegations show that the pleader is entitled to relief. Twombly, 550 U.S. at 555-56; Fed. R. Civ. P. 8(a)(2).  The principle that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions, however. Iqbal, 129 S. Ct. at 1949-50 (stating "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice"). Although legal conclusions can provide the framework for a complaint, they must be supported by factual allegations. Id. at 1950. The plausibility of the plaintiff's claim is reviewed "as a whole, not the plausibility of each individual allegation." Zoltek Corp. v. Structural Polymer Grp., 592 F.3d 893, 896 n.4 (8th Cir. 2010).

**Discussion**

In resolving defendant Puleo's motion to dismiss, the Court is mindful of the procedural posture of this case, in that complete diversity of citizenship does not appear on the face of the removed Petition or the Complaint. "The propriety of removal to federal court depends on whether the claim comes within the scope of the federal court's subject matter jurisdiction." Peters v. Union Pacific R. Co., 80 F.3d 257, 260 (1996) (citing 28 U.S.C. § 1441(b)). "A claim may be removed only if it could have been brought in federal court originally." Id. "Critically, the party seeking removal has the burden to establish federal subject matter jurisdiction; all doubts about federal jurisdiction must be resolved in favor of remand[.]" Central Iowa Power Co-op. v. Midwest Indep.

Transmission Sys. Operator, Inc., 561 F.3d 904, 912 (8th Cir. 2009) (internal citation and cited case omitted).

For diversity jurisdiction to exist under 28 U.S.C. § 1332(a)(1), there must be complete diversity of citizenship between plaintiffs and defendants.  Buckley v. Control Data Corp., 923 F.2d 96, 97, n.6 (8th Cir. 1991).  "It is settled, of course, that absent complete diversity a case is not removable because the district court would lack original jurisdiction."  Exxon Mobil Corp. v. Allapattah Servs., Inc., 545 U.S. 546, 564 (2005) (cited case omitted).  Where complete diversity of citizenship does not exist, 28 U.S.C. § 1447(c) requires a district court to remand the case to state court for lack of subject matter jurisdiction.

Fraudulent joinder is an exception to the rule that complete diversity of citizenship must exist both when the state petition is filed and when the petition for removal is filed.  Knudson v. Systems Painters, Inc., 634 F.3d 968, 976 (8th Cir. 2011).  "[A] plaintiff cannot defeat a defendant's 'right of removal' by fraudulently joining a defendant who has 'no real connection with the controversy.'"  Id. (quoted case omitted).  "The purpose of this exception is to strike a balance between the plaintiff's right to select a particular forum and the defendant's right to remove the case to federal court."  Id. (cited source omitted).

"Ordinarily, to prove that a plaintiff fraudulently joined a diversity-destroying defendant, [the Eighth Circuit Court of Appeals has] required a defendant seeking removal to prove that the plaintiff's claim against the diversity-destroying defendant has 'no reasonable basis in fact and law.'"  Knudson, 634 F.3d at 977 (quoting Filla v. Norfolk S. Ry. Co., 336 F.3d 806, 810 (8th Cir. 2003)).  Under this standard, "if it is *clear* under governing state law that the complaint does not state a cause of action against the non-diverse defendant, the joinder is fraudulent and federal

jurisdiction of the case should be retained." Filla, 336 F.3d at 810 (internal quotation marks omitted). Joinder is not fraudulent where "there is arguably a reasonable basis for predicting that the state law might impose liability based upon the facts involved." Id. at 811.

As the Eighth Circuit explained in Filla,

> [T]he district court's task is limited to determining whether there is arguably a reasonable basis for predicting that the state law might impose liability based upon the facts involved. In making such a prediction, the district court should resolve all facts and ambiguities in the current controlling substantive law in the plaintiff's favor. However, in its review of a fraudulent-joinder claim, the court has no responsibility to *definitively* settle the ambiguous question of state law.

Id. at 811 (citations omitted). The Eighth Circuit instructed that "where the sufficiency of the complaint against the non-diverse defendant is questionable, 'the better practice is for the federal court not to decide the doubtful question . . . but simply to remand the case and leave the question for the state courts to decide.'" Id. (quoting Iowa Pub. Serv. Co. v. Medicine Bow Coal Co., 556 F.2d 400, 406 (8th Cir. 1977)).

Puleo argues that she is fraudulently joined because the Complaint fails to assert any personal duty owed by her to decedent Leonard Perry independent of her employer's non-delegable duties of workplace safety, and thus fails to assert a duty that exists outside of the master-servant relationship. Puleo argues that as a result, the Complaint cannot survive a motion to dismiss for failure to state a clause of action for negligence, citing Hansen, 375 S.W.3d at 217.

Puleo contends that all of plaintiff's allegations against her arise solely out of her employer's non-delegable duty to provide a safe workplace. Puleo states that the "Allegations Common to All Counts" portion of the Complaint establishes that plaintiff's allegations are made in the context of the employment relationship between McJunkin and Puleo, and Puleo's relationship to the decedent, as plaintiff specifically alleges that Puleo was employed as the Yard Manager of McJunkin's

7

Premises, and that Puleo had the duty to keep the Premises and the shed thereon in a reasonably safe condition.  (Complaint at 3, ¶¶ 7-9).

Puleo argues that under Hansen, it is clear a co-employee such as herself does not owe a personal duty of care to provide a safe workplace and cannot be sued in negligence for acting or failing to act in breach of such a duty, so plaintiff's general allegations that (1) Puleo was acting in her capacity as an employee of defendant McJunkin, and (2) Puleo's resultant duty was to provide decedent Perry with a safe workplace, are contrary to Hansen's holding.

Puleo notes that in Counts V, VI and VII, she is alleged to have breached certain duties assumed as a result of her employment with McJunkin, which are identical to those plaintiff alleges against McJunkin in Counts I, II and III:

- Failure to install and maintain smoke detectors and/or smoke alarms in the Shed;
- Failure to install any fire suppression devices or systems in the Shed;
- Failure to provide and maintain proper emergency exits and points of emergency egress;
- Failure to adequately warn decedent Perry of the dangerous conditions.

Puleo states that in Count VIII, plaintiff alleges that Puleo owed decedent Perry a "personal duty of ordinary care," perhaps in an effort to establish a duty independent from her employer, and tries to establish that Puleo acted outside of her employment relationship by alleging that Puleo performed three "affirmative negligent acts":

- Puleo allegedly undertook to make the Shed free to fire hazards, but failed to use ordinary care in her undertaking;
- Puleo allegedly provided decedent Perry access to enter and/or occupy the Shed when Puleo      knew of an unreasonable and increased risk; and
- Puleo failed to warn decedent Perry of an unreasonable and increased risk.

Puleo contends that the three alleged "affirmative negligent acts" are not independent acts at all, but rather fall squarely within the scope of the employer's non-delegable duty to provide a

8

safe workplace, and cannot be separated from Puleo's assumption or undertaking of duties which were part and parcel of her employment for defendant McJunkin.

Plaintiff responds that Puleo's reliance on Hansen is misguided, because it is not the controlling precedent and is distinguishable from the instant case, and that even if Hansen were controlling, she has pleaded a duty of care against Puleo under a co-employee theory of liability that was independent of the duty to provide a safe workplace that would satisfy Hansen's standard. Plaintiff contends that the controlling standard is set forth in Logsdon v. Duncan, 293 S.W.2d 944, 949 (Mo. 1956) (en banc), in which the Missouri Supreme Court held that co-employees owe one another a duty of ordinary care in the prosecution of their work duties.

Plaintiff further responds that Counts V, VI and VII are premises liability counts against Puleo, and are not pleaded under a theory of co-employee negligence, but that Puleo's motion to dismiss contests these counts based only on a misplaced argument concerning co-employee negligence.  Plaintiff states that Puleo cites no legal authority suggesting that the co-employee negligence standard of Hansen is applicable to premises liability claims.  Plaintiff contends that she pleaded her premises liability counts in the alternative to the co-employee liability count, and that the law governing co-employee liability is inapplicable to those counts.  Plaintiff notes that in the "Allegations Common to All Counts" portion of the Complaint, she did not allege that decedent Perry was acting in the course and scope of his employment when he was permitted to use and was injured in the shed on McJunkin's Premises, and states that in Counts V-VII, she specifically pleaded that he was present as an invitee, licensee, or trespasser.  Thus, plaintiff contends that for purposes of Counts V, VI and VII, there is no allegation that Puleo breached a duty owed to the decedent as a co-employee.

Puleo replies that plaintiff has taken the holding of Logsdon out of context, as Logsdon cannot properly be read to "sweep a specific duty to perform an employer's non-delegable duties into the general duty an employee owes fellow employees to exercise reasonable care in the performance of the employee's work," Puleo Reply at 3, and "stands only for the proposition that an employee can proceed against a co-employee in situations involving an independent act by an employee that increased the risk of injury to a fellow employee and did not implicate the employer's duty to maintain a safe workplace." Id. at 4, citing Hansen, 375 S.W.3d at 217-18.

Puleo further replies that regardless of how plaintiff pleaded negligence against Puleo in her Complaint, whether in premises liability or as a general negligence count, the basis for the allegations against her arise from her status as a co-employee to decedent Perry, and therefore plaintiff fails to state a claim upon which relief can be granted. In support, Puleo cites the Missouri Court of Appeals' statements in Hansen that when an injured worker seeks to bring a negligence action against his co-employee, "as in other common-law actions, the threshold matter is to establish the existence of a duty owed by the co-employee," id. at 208 (quoted case omitted), and it "is not simply the existence of a duty on the part of the co-employee, but the nature of the duty involved which is key in determining whether the co-employee may be held liable." Id. (quoted case omitted).

Puleo argues that the duties plaintiff ascribes to her are identical to those she ascribes to the employer, defendant McJunkin, and that plaintiff has not alleged specific acts of negligence by Puleo that are not subsumed within the non-delegable duty of Puleo's employer to provide a safe workplace. Puleo concludes that the "analysis remains the same, regardless of whether Plaintiff labels her allegations" as "Premises Liability" or "Co-Employee Negligence." Reply at 6.

In surresponse, plaintiff argues that she pleaded a personal duty of care owed by Puleo to decedent Perry, because in Count VIII of the Complaint she alleges that "Puleo owed Decedent Perry a personal duty of ordinary care to protect Decedent Perry from reasonably anticipated harm," Complaint at 19, ¶ 78, and that Puleo breached her personal duty of care through affirmative acts of negligence that go beyond the scope of the employer's duty to provide a safe workplace, such as providing Perry with access to the shed, even though she knew, in her supervisory capacity as Yard Manager, of an unreasonably and increased danger present in the shed. Complaint at 21, ¶ 7 & 20, ¶ 81. Plaintiff emphasizes that the premises liability counts do not allege that Perry was within the course and scope of his employment when he died, that the shed was his workplace, or that Puleo was his co-employee, and therefore Puleo's arguments concerning co-employee non-delegable duties to provide a safe workplace are misplaced.

In surreply, Puleo argues that plaintiff's use of the word "personal" in Count VIII of the Complaint is insufficient to allege a duty independent of the employer's non-delegable safety duties, and that the negligent acts she ascribes to Puleo cannot and do not arise from a personal duty, but rather could only arise from Puleo's duties as a co-employee of defendant McJunkin and its duty to provide a safe workplace. Puleo also argues that plaintiff did not expressly plead any counts in the alternative in the Complaint, and therefore she and the Court could reasonably expect to read the Complaint as generally alleging that Puleo and Perry were co-employees for all counts against Puleo.

The question for the Court is not whether state law will impose liability on Puleo, but whether state law <u>might</u> impose liability. Filla, 336 F.3d at 810. The Court is mindful that McJunkin and Puleo have the burden to establish federal subject matter jurisdiction, and that "all

11

doubts about federal jurisdiction must be resolved in favor of remand." Central Iowa Power Co-op., 561 F.3d at 912.  The Court is also mindful that to establish fraudulent joinder, the defendants must prove plaintiff's claim against Puleo has "no reasonable basis in fact and law."  Filla, 336 F.3d at 810.  In conducting this analysis, the Court "has no responsibility to *definitively* settle [an] ambiguous question of state law."  Id. at 811.

Under Missouri law, what constitutes an affirmative negligent act in the context of co-employee negligence is not "susceptible of reliable definition" and must be determined on a "case-by-case basis with close reference to the facts in each individual case."  State ex rel. Taylor v. Wallace, 73 S.W.3d 620, 622 (Mo. 2002) (en banc), overruled on other grounds by McCracken v. Wal-Mart Stores East, LP, 298 S.W.3d 473, 479 (Mo. 2009) (en banc)).  In Wallace, the Missouri Supreme Court noted the differing results obtained in various Missouri co-employee negligence cases.  It compared Sexton v. Jenkins & Assocs., Inc., 41 S.W.3d 1 (Mo. Ct. App. 2000) (no liability for employees who designed and built an elevator shaft railing); Felling v. Ritter, 876 S.W.2d 2 (Mo. Ct. App. 1994) (no liability for managers who failed to install a "deadman's switch" on a wire rewinding machine that would allegedly have prevented death of plaintiff); Kelley v. DeKalb Energy Co., 865 S.W.2d 670, 672 (Mo. 1993) (en banc) (no liability for various employees who allegedly misdesigned and misinstalled a dangerous "corn flamer"), with Hedglin v. Stahl Specialty Co., 903 S.W.2d 922 (Mo. Ct. App. 1995) (liability for supervisor who directed an employee to venture onto a makeshift crane above a vat of scalding water); and Tauchert v. Boatmen's Nat'l Bank of St. Louis, 849 S.W.2d 573 (Mo. 1993) (en banc) (liability for supervisor who allegedly designed and built a makeshift hoist, which caused an elevator to crash with an employee inside).  Taylor, 73 S.W.3d at 622, n.7.

In the Taylor case itself, an employee driving a truck ran into a mailbox, which caused the plaintiff co-employee to fall. The Missouri Supreme Court concluded this failure to drive carefully did not constitute the "purposeful, affirmatively dangerous conduct that Missouri courts have recognized as moving a fellow employee outside the protection of the Workers' Compensation Law's exclusive remedy provisions" and was "not an allegation of 'something more' than a failure to provide a safe working environment," as would be necessary to support a negligence action against the co-employee driver. Id. at 622.

The Missouri Supreme Court further described its interpretation of the affirmatively negligent act of a co-employee as follows:

> Consistent with the Badami/Taylor line of cases, the notion of an affirmatively negligent act—the "something more"—can best be described as an affirmative act that creates additional danger beyond that normally faced in the job-specific work environment. This description satisfies the concern that <u>although there must be an independent duty to the injured co-employee, that duty cannot arise from a mere failure to correct an unsafe condition and must be separate and apart from the employer's non-delegable duty to provide a safe workplace</u>.

Burns v. Smith, 214 S.W.3d 335, 338 (Mo. 2007) (en banc) (emphasis added).

The Court believes that the Hansen case on which Puleo relies accurately states the law in Missouri on co-employee negligence, but the general principles it articulates are not necessarily dispositive of the allegations in this case. As an initial matter, the Court does not give any weight to the Complaint's conclusory allegation that Puleo owed a personal duty to the decedent. See Iqbal, 129 S. Ct. at 1949-50. Puleo is correct that plaintiff's allegations against her in the co-employee negligence count (Count VIII) are identical to the allegations against the employer, McJunkin. Further, it does not readily appear that Count VIII alleges purposeful, affirmatively dangerous conduct by Puleo that creates additional danger. The Court need not decide whether Count VIII fails

to state a claim, however, because it finds for the reasons discussed below that Puleo has failed to establish her entitlement to dismissal of Counts V-VII as a matter of law.

The record before the Court is not clear as to why the decedent was present in the shed when the fire broke out, or at what time the fire occurred. In the premises liability counts, plaintiff has pleaded, among other things, that the decedent was a constant trespasser in the shed, that he "customarily used, entered, and/or occupied" the shed, and that part of the shed "served as a shelter for constant trespassers and contained a space heater, Sterno cans and cooking materials, among other things." In those counts, plaintiff has omitted any allegation that the decedent was acting in the scope of his employment at the time.[2] Construing the Complaint in the light most favorable to plaintiff, and granting all reasonable inferences in her favor, plaintiff is alleging that Puleo knew the decedent was staying in the shed, which presumably would not be within the scope of his employment, but failed to warn him that this was unreasonably dangerous because of conditions in the shed of which she was aware but he was not. It could also be reasonable to infer that the shed

---

[2]The Court agrees with Puleo that plaintiff did not explicitly plead any counts of the Complaint in the alternative. The Federal Rules of Civil Procedure allow parties to plead two or more statements of a claim alternatively or hypothetically, regardless of consistency. See Rule 8(d)(2), (3), Fed. R. Civ. P. This Court has stated that the "liberal policy reflected in Rule 8(d) mandates that courts not construe a pleading as an admission against another alternative or inconsistent pleading in the same case." Franke v. Greene, 2012 WL 3156577, at *5 (E.D. Mo. Aug. 2, 2012) (quotation marks and quoted case omitted) (Hamilton, J.). In Franke, the Court found that while the defendant's quantum meruit counterclaim was not explicitly pleaded in the alternative to his breach of contract counterclaim, it was clear the defendant had intended it to be alternative. The Court stated it would not "require hypertechnicality in pleading these claims in the alternative," and refused to dismiss the quantum meruit claim based on the defendant's "failure to use more precise wording." Id. Here, it is clear from the context of the Complaint that plaintiff intended to plead her various counts alternatively. While the better practice is to explicitly plead inconsistent counts in the alternative, in this specific instance the Court will decline Puleo's invitation to read the Complaint as generally alleging that Puleo and Perry were co-employees for all counts against Puleo.

might have been safe as a workplace, but not as a place to cook, eat and stay, presumably after working hours when no work was being performed in the shed. Thus, the Complaint arguably contains allegations against Puleo that are separate and apart from a failure to carry out the employer's non-delegable duty to provide a safe workplace.

Puleo has not cited any case law or other authority supporting the application of Hansen's co-employee negligence principles to premises liability allegations of the type pleaded in the Complaint. Puleo has not, therefore, established that it is *clear* under governing state law that the Complaint does not state a cause of action against her, and that there is no reasonable basis in fact and law for any of the claims. Although the sufficiency of the Complaint against Puleo is questionable, the Court will be guided by the Eighth Circuit's counsel that "the better practice is for the federal court not to decide the doubtful question . . . but simply to remand the case and leave the question for the state courts to decide." Filla, 336 F.3d at 811 (quoted case omitted). Accordingly, Puleo's motion to dismiss should be denied as to Counts V, VI and VII. As a result, the Court lacks subject matter jurisdiction over this action.

**Conclusion**

For the foregoing reasons, defendant Puleo's motion to dismiss should be denied. Defendant McJunkin's motion to strike plaintiff's claim for punitive damages or in the alternative for more definite statement remains pending for resolution by the state court following remand. Because the Court concludes that defendant Puleo was not fraudulently joined, the Court lacks subject matter jurisdiction over this action as complete diversity of citizenship does not exist and no federal claims are pleaded in the complaint. Consequently, the case must be remanded to state court pursuant to 28 U.S.C. § 1447(c).

Accordingly,

**IT IS HEREBY ORDERED** that defendant Puleo's motion to dismiss is **DENIED**. [Doc. 21]

**IT IS FURTHER ORDERED** that defendant McJunkin's motion to strike plaintiff's claim for punitive damages or in the alternative for more definite statement remains pending for resolution by the state court following remand. [Doc. 23]

An Order of Remand will accompany this Memorandum and Order.

                                                                       **CHARLES A. SHAW**
                                                                       **UNITED STATES DISTRICT JUDGE**

Dated this  14th  day of March, 2013.